THE BRUNSWICK AND WESTERN RAILROAD CO. *v.* GIBSON.

1. The instructions of the court as to the law of contributory negligence, taken all together, were substantially in accord with the rule laid down in *Americus, Preston & Lumpkin R. Co.* v. *Luckie*, 87 *Ga.* 6, and were correct. The request to charge on this subject was covered by the charge given.

2. It appearing that the deceased was killed by a locomotive moving backwards upon a railroad track running longitudinally through a public street in a city, and the declaration expressly alleging that the defendant company was negligent in failing "to have a flagman or some other person standing on the rear end of said locomotive while it was being run backwards as aforesaid," there was no error in submitting to the jury for their determination the question whether or not such failure was an act of negligence.

3. The requests to charge, except the one above referred to and one other, which was of no serious importance, were properly refused, because in effect their purpose was to obtain instructions from the court that such and such acts not *per se* negligent in law would be in fact negligent.

4. The evidence warranted the verdict, and this being a second finding in the plaintiff's favor, this court will not overrule the discretion of the trial judge in refusing to set it aside.

November 15, 1895.

Action for damages. Before Judge Sweat. Glynn superior court. May term, 1895.

| 97 | 489 |
|---|---|
| 102 | 487 |

| 97 | 489 |
|---|---|
| 110 | 247 |

| 97 | 489 |
|---|---|
| f113 | 158 |
| 113 | 710 |
| 113 | 712 |

| 97 | 489 |
|---|---|
| 114 | 371 |

| 97 | 489 |
|---|---|
| 116 | 17 |

| 97 | 489 |
|---|---|
| 124 | 1052 |

| 97 | 489 |
|---|---|
| 126 | 711 |

| 97 | 489 |
|---|---|
| 130 | 418 |

Mrs. Gibson sued the railroad company for damages from the homicide of her son Richard, alleging that on December 16, 1892, while he was endeavoring to cross defendant's railroad, at or near the public crossing immediately opposite the saw-mill of Cook Brothers & Co., in Brunswick, and near the intersection of Bay and Prince streets and near the center of Bay street, and just as for the moment he entered upon the railroad track, using every diligence and care, defendant, without the exercise of ordinary and reasonable care, but with wanton and criminal negligence in the running of its locomotives, etc., ran over and killed him. Just before he was so run over, the locomotive which ran over him was coupled to several flat cars at its front end, and with said cars blockaded the public crossing, so that he could not cross at that point with safety; and in order to cross the track without crawling under or going over the same, he walked south of the public crossing about fifty feet, which was the safest and usual way for persons to cross the track when said public crossing was blockaded, and started to cross the track near the rear of the locomotive, which was fronting northwardly, when suddenly, quickly and without any signal of starting, the locomotive was run backwards at a rapid rate of speed, knocking him down and killing him. The public crossing in question was a thoroughfare constantly used by a great number of people during all hours, and Richard might reasonably have thought, and so did think, it safe to undertake to cross the railroad as he did, and well might and reasonably did believe that if the engine were to be started backward it would be at a reasonably slow speed and after signal given. No guard or protection was at the crossing, and no flagman or person there or on the rear end of the locomotive to warn him of the rapid movement of the locomotive backward, etc. His age and earnings, his contribution to plaintiff's support, her dependency on him for support, etc., were alleged. Two verdicts have

been rendered for the plaintiff, the first for $7,500, and the last for $5,500. Defendant's motion for new trial was overruled, and it excepted.

The motion alleged that the verdict was contrary to law and evidence, and as follows:

Error in charging: "If the complainant and agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him."

Error in charging, under the facts of the case and in the absence of statutory requirement that a man should be kept on the rear foot-board of the engine at any point except at a crossing, as follows: "The court charges you that in looking to all the evidence, the circumstances, the scene of the homicide and all of the surroundings, it is a question for you to determine as to whether or not ordinary care and prudence required that the defendant railroad company should have so kept some one constantly on the lookout in front of its moving train, to warn passers-by of danger, and whether or not a failure so to do was negligence on the part of the defendant company. You may or may not determine that ordinary care and prudence on the part of the railroad company required this, or that the failure so to do constituted negligence on its part. But if you should determine that ordinary care and prudence so required, and that the failure so to provide some one on the constant watch and lookout was negligence, and that such negligence contributed or was the cause resulting in the homicide of the deceased, and that at the time, by the exercise of ordinary care and prudence upon his part, he could not have prevented his homicide, then that would make such a case as would authorize a recovery upon the part of this plaintiff."

The court charged: "But if defendant was at fault, and you find deceased could not, by ordinary care, have avoided the alleged killing of himself occasioned by defendant's

negligence, then the plaintiff could recover. Should it
appear that both deceased and defendant were at fault,
and the alleged killing was the result of the fault of both,
and you find from the evidence that the deceased could not
by ordinary care have avoided the alleged killing of him-
self occasioned by defendant's negligence, then, notwith-
standing he may have been to some extent negligent,
plaintiff would be entitled to recover, but the amount of
damages should be apportioned and reduced accordingly.
In other words, if you should find that the deceased, as an
ordinarily careful and prudent man, should not have at-
tempted to have crossed the defendant company's railroad
track at the point where he did, but should have waited
where he was until the crossing, which may have been
blocked, was cleared, so that he could pass over with
safety, or that he should have gone up or down to some
safe crossing before attempting to pass over the tracks of
the defendant company, and that as an ordinarily prudent
and careful man he did not so act on the occasion, but that
he was at fault or in some degree negligent at that point in
not so acting, but that with the train standing still--the
engine and cars not moving, and standing over a crossing,
immediately near by or in front of it, which was usually
and ordinarily used by people going to and from the
place where he was at, he undertook to go around the cars
and engine, and that while attempting to pass around and
over the defendant company's track, if you shall find that
the defendant company was negligent in either of the re-
spects as alleged and claimed, and about which the court
has instructed you, and that when such negligence began
on the part of the defendant company, its servants or
employees; and was existing, that the deceased then, at
that time, was not in fault or negligent in not exercising
all ordinary care with a view of saving himself harmless,
and that his homicide was the result of the negligence of
the defendant company, the court charges you that that

would make such a case, if you should find this to be such a case as that, according to the truth as you may find it, as would make a case of contributory negligence in which the plaintiff could recover, but that the amount of his recovery would not be the same and to the same extent as if the deceased had at no time been at fault, or negligent, but one where the amount of the recovery should be reduced in proportion to the extent of his fault or negligence, and the amount of recovery in such case upon the part of the plaintiff thus lessened and reduced." Alleged to be erroneous, in that the facts did not warrant a charge as to contributory negligence; and in that it assumed that the engine was standing still when Gibson stepped upon the track.

Error in refusing to give the following charges as re-. quested:

"The law of contributory negligence is applicable only when both parties are at fault, and when, also, the plaintiff could not by ordinary care have avoided the injury which defendant's negligence produced.

"If the jury believe from the evidence that Richard B. Gibson was killed as alleged in the declaration in this case, by an accident to which he consented, or by his own negligence, the plaintiff cannot recover. Such consent or such negligence in a case of homicide must be evidenced by the acts and circumstances of the transaction.

: "If the jury believe from the evidence that the act of Richard B. Gibson was the cause of the homicide, there can be no recovery in this case. , .

"If the evidence discloses in this case that an engine and cars of the defendant blockaded a crossing leading to Cook's mill, and further discloses that Gibson was at such mill during such blockade, and instead of waiting for such blockade to be removed, walked southward and attempted to cross in front of the engine and was killed by the starting up of such engine, there can be no recovery in this case, whether the railroad company is negligent or not,

unless it is affirmatively shown from the evidence in this case that the engineer or fireman saw this man and wilfully and wantonly ran him down.

"If the evidence discloses the fact that the train of the defendant which killed Gibson blockaded a private crossing at Cook's mill for a short period of time, and that Gibson undertook to go around the engine, although it was standing still when he started for that purpose, or, having been standing still at the time, he undertook to step in front of the tender, and that the point at which he so undertook to step in front of the tender was not a public crossing, such act upon his part was gross negligence and the absence of that ordinary and reasonable care and diligence which it was incumbent upon him to exercise, and that there can be no recovery in this case.

"If the evidence discloses that Gibson sought to cross the tracks of the defendant at a point not a crossing, and sought to cross within four or six feet, or other short distance, from such engine, such attempt to cross at a point which would not give reasonable time for him to escape after the engine moved would be an aggravation of his act and would preclude a recovery.

"If the evidence discloses that Gibson, the deceased, by waiting until the train had pulled out from the crossing, could have crossed at Cook's crossing to his mill with safety, or that he could have gone northward to the public crossing at London street and crossed with safety, or that he could have gone southward to Prince street and crossed with safety, the failure to adopt one of these methods of crossing was the absence of the exercise of ordinary and reasonable care and diligence, the exercise of which would have prevented the injury, and there can be no recovery in this case.

"If the evidence discloses in this case that at the point where Gibson undertook to cross the track there was lumber piled both on the eastern and western side of said

track, and that there was no such obstruction at Cook's crossing at London street, that would be an aggravation of the negligence of Gibson in attempting to cross in front of the tender of the engine.

"If a person finds a public crossing blockaded by the cars and engine of a railroad company, it is the exercise of ordinary and reasonable care and diligence to await the removal of such blockade. And if the party, for the purpose of saving time or otherwise, undertakes to cross the track by going around the train at either end of it at a point not a crossing, and near enough to a train to be injured if it moves, and is injured thereby, there can be no recovery; he assumes the added peril by his voluntary act; and it makes no difference how many other people would, under like circumstances, have assumed such peril, that can be no excuse in the particular case.

"One who undertakes to cross a railroad track at a point not a crossing, voluntarily assumes the peril resulting from said act, and if said act causes an injury to him and kills him, there can be no recovery, unless the negligence is gross enough in the event of homicide to amount to wilful homicide, or the engine was wilfully and wantonly run over the party by the employees of the railroad company when they could have avoided it.

"If the evidence discloses in this case that Gibson undertook to cross the track of the defendant at a point not a public crossing, and the defendant's engineer and fireman could not see him at the time they started their engine, there can be no recovery.

"If it shows that Gibson undertook to cross the track of the defendant at a point not a crossing, the defendant is liable only where perceiving the danger they make no effort to avoid it, and this without regard to whether they could have seen it by the exercise of due diligence.

"If the declaration of the plaintiff sets out that the crossing at Cook's mill was blockaded by the locomotive

and flat cars, and that Richard B. Gibson walked south to a point about fifty feet, and started to cross said track near the back or rear of said locomotive at a point not a crossing, the plaintiff is bound by such allegations; they are to be considered the truth of this case, as an admission that Richard B. Gibson did not undertake to cross at a public crossing.

"If the evidence discloses that from the track of the defendant in Bay street said tracks diverged to the water front on the western side of defendant's main line up and down Bay street, and that two of said side-tracks went into Cook's property near his mill, and that said track and such side-tracks were used by the defendant at the time of the injury to Gibson, in switching, drilling or changing cars, and that Gibson undertook, at a point not a crossing, to cross in front of the tender of the engine, whether said engine was standing still at the time or not, he was bound to use diligence commensurate with the peril which he placed himself in, and if he failed to do this, there can be no recovery for his homicide. Under such circumstances, the defendant would owe him no duty other than not to injure him if it knew or saw him in time to prevent the injury; the defendant would not be bound to look and watch for Gibson under such circumstances, as it would for one of its employees engaged about the business, and as it would for a person on its main line of travel while carrying on its accustomed duties in transporting passengers and things from one place to another.

"If the evidence discloses that in the direction in which the engine was standing with the tender to the rear, that is to say, in position to move backward down the track, a man stepping on the track less than thirty-eight feet from the engine could not have been seen from the cab of the engine, it would be the absence of ordinary care for a man to step in front of the rear of an engine at a less distance."

*Goodyear, Kay & Brantley,* for plaintiff in error.
*Symmes & Bennet,* contra.

SIMMONS, Chief Justice.

1. In the case of *Americus, Preston & Lumpkin Railroad Co.* v. *Luckie,* 87 *Ga.* 6, this court, construing sections 2972 and 3034 of the code, held, in substance, that the plaintiff in an action against a railroad company for personal injuries cannot recover, even though the company may have been negligent, if, after the negligence of the defendant began or was existing, the person injured could by ordinary care have avoided the consequences to himself of that negligence; also that if the person injured could not, by the exercise of ordinary care, have avoided the injury, and the injury resulted from the defendant's negligence, he can recover although to some extent negligent himself, but the amount of the recovery should be diminished in proportion to the amount of fault attributable to him; and that this latter rule is not a qualification of the former. The first rule prevents his recovery at all if by ordinary care he could have avoided the injury; the second allows him to recover although negligent himself, if he could not by the exercise of ordinary care have avoided it. Taking into consideration the entire charge of the trial judge upon the law of contributory negligence, it was substantially in accord with the law as above stated, and covered substantially the defendant's requests to charge on this subject.

2. It appears from the record, that the railroad company's track extended longitudinally through Bay street, one of the principal thoroughfares of the city of Brunswick, and that the trains of the company ran from one end of the street to the other. The locomotive and train which ran over and killed the plaintiff's son were at the upper end of the street, standing still, and blocked a crossing which was in general use by the people in that locality.

v 97-32

In order for the train to run down the street, the locomotive had to run backwards, with the tender in front. The deceased started across the street a short distance beyond the crossing, and while he was crossing the track the train suddenly started and ran over him. The declaration alleged that the defendant was negligent in failing to have a flagman or some other person at the rear of the locomotive while it was being run backward, so as to warn persons who were crossing or attempting to cross the track as the train was approaching. The court, in its charge to the jury, submitted to them whether under all the circumstances disclosed by the evidence the failure to do this was negligence. The defendant, in its motion for a new trial, alleged that this was error, because there was no statutory requirement or ordinance requiring the company to make any provision of this kind for warning persons crossing the track. As before remarked, the track, at this point, ran through a leading thoroughfare of the city; a large number of people doubtless crossed it every hour; and whether there was a statute or ordinance requiring it or not, we think the jury would have a right, under the circumstances, to say that the railroad company ought to have had some person stationed at the end of the train at that point, to give warning.

It was contended on the part of the railroad company, that the crossing blocked by the train on that occasion was a private crossing. If the street was a public one, we do not see how there could be a private crossing upon it. Nor do we agree with counsel for the railroad company in his contention with regard to the right of the public to cross the street elsewhere than at certain points. It is true that in most cities streets are usually crossed at certain points, generally at the intersection of other streets, but there is no law which requires people to cross only at such places. If the street is a public one, people have a right to cross it at any place along its line, and the law will protect them.

from being run over, either by ordinary vehicles or railroad trains. The only difference in the duty of a railroad company towards persons crossing at the usual places of crossing and towards those crossing at other places in the street, is in the greater degree of care required in the one case than in the other. On the other hand, there is a corresponding duty on the part of persons who cross the street elsewhere than at the usual crossings, to exercise a greater degree of care for their own protection than would be required of them at such crossings. And of course no person would have a right to cross the track in front of a moving train when it would be dangerous to do so.

3. It is complained that the court erred in refusing to charge as follows: "If the declaration of the plaintiff sets out that the crossing at Cook's mill was blockaded by the locomotives and flat cars, and that Richard B. Gibson walked south to a point about fifty feet, and started to cross said track near the back or rear of said locomotive at a point not a crossing, the plaintiff is bound by such allegations; they are to be considered the truth of this case, as an admission that Richard B. Gibson did not undertake to cross at a public crossing." If we are correct in what we have said as to the rights of the public to cross the street at any place along its line provided they do so with proper care and caution, there was no error in refusing to give this request in charge; and whether this would have been a proper charge or not, the failure to give it would not, under the facts of the case, be sufficient to demand a new trial. Nor did the court err in refusing the other requests set out in the motion for a new trial. It would have been error against the plaintiff if the court had instructed the jury as requested, because these requests contain intimations from the court to the jury as to what would have been negligence on the part of the deceased, and this question, as we have often held, is for the jury alone and not for the court.

4. The evidence authorized the finding of the jury, and this being the second verdict in the plaintiff's favor, we will not overrule the discretion of the trial judge in refusing a new trial. *Judgment affirmed.*